On the Re-hearing,
THOMPSON, J.,
said:
I have listened with pleasure and attention to the argument addressed to us on the re-hearing. The views submitted by the counsel of the appellant are plausible and ingenious, but they have not weakened or shaken in the least the firm conviction fastened upon my mind upon the first hearing. I adhere to the opinion then expressed, with undiminished confidence in its rectitude, upon general principles, and the plain and reasonable rules of construction, in the absence of any pertinent ^decisions or authorities to guide or govern us. And my confidence is not a little confirmed and strengthened by the legislative declaration or interpretation of the law under consideration, contained in the act of the 21st February, 1840, (Sess. Acts 1839-40, c. 56, § 3, p. 49,) cited by the counsel of the appellees, providing that all the estate to which a posthumous child may be entitled, under the provisions of the law we are considering, and which shall not have been expended in his or her support and education, “shall revert to the persons to whom such estate may have been devised or bequeathed by the will of such testator;” shewing, as I think, unmistakably, that the Legislature which passed that law understood the provision of the posthumous child under the act of 1785, to be limited and confined to the estate devised and bequeathed by the will. And although this does not profess to be, and may not be regarded as properly a declaratory law, giving a legislative exposition of the act of 1785, obligatory upon the courts in cases arising even subsequently to its enactment, much less to cases which arise (asdid this) before its passage; yet, as the opinion of the law-making power of the State, it is entitled to the respectful consideration of the law-expounding power. For that purpose only I understand the counsel of the appellees as citing it. With a like *591 view have I referred to it for the purpose of relying on this concurrence of opinion as sustaining and corroborating my own construction of the statute.
CLOPTON, J.
John Macon, by deed executed on the 10th of November, 1787, and recorded on the 9th of June, 1788, made advancements to his two daughters, Caty Todd Macon and Martha Todd Macon, to take effect at his death. He died in l793, and by his will, dated on the 9th of February, 1793, and a codicil thereto dated on the ist of March, 1793, after making provision for his wife during her life, he disposed of his entire estate, real and personal, to his son and his four daughters, including those to whom he had made advancements. *He died leaving his wife enciente, and a posthumous child (the plaintiff Ann) was born, for whom no provision was made by the will or otherwise; nor was she disinherited; she was only pre-termitted. The devisees and legatees in the will contributed to the plaintiff Ann pro-portionably, so as to make up to her one-sixth part of the estate devised and bequeathed to them directly by the will (but not taking into the estimate the advancements which had been made to the two daughters). To the raising of this portion, the widow contributed nothing. Subsequently this suit was instituted by the plaintiff Ann, by Thomas Miller, her guardian, against the widow of the testator and her second husband, Archibald Free-land, seeking contribution from them out of the estate devised by the will of John Macon to Mrs. Freeland for life, and making Freeland and wife, only, parties. Nothing seems to have been done in the case until after the marriage of the plaintiff Ann with the plaintiff Daniel A. Wilson, when the suit was revived in their names, and then in January, 1817, the plaintiffs filed an amended bill, making the brother and the four sisters of the female plaintiff, and the husbands of the sisters, defendants, and praying that the advancements made to the two daughters, as they had accepted and received the estate devised and bequeathed to them by the will, should be brought into account, and thus the portion of the plaintiff Ann increased beyond what she had received. Upon the hearing, the amended bill was dismissed, without disposing of the original bill, and from that decree this appeal allowed.
The question involved in the case is this: Is the posthumous child, who is wholly pre-termitted by the father’s will, and is not otherwise provided for, entitled to have the advancements made to the devisees and legatees in the will, taken into the estimate of the father’s estate, if they claim the devises and legacies in the will? And the solution of this question depends upon the proper construction of the last clause of the third section *of the act of 1785, “concerning wills, distributions of intestates’ estates,” &c., which is in the following words: ‘ ‘ When a testator shall leave children born, and his wife enciente, the posthumous child or children, if neither be unprovided for by settlement, and be neither provided for nor disinherited, but only pretermitted by the last will and testament, shall succeed to the same portion of the father’s estate, as such child would have been entitled to, if the father had died intestate; towards raising which portion, the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them by the same will and testament.” And of the last clause of the twenty-fifth section of the same act, in these words: ‘1 Where any children of the intestate, or their issue, shall have received from the intestate, in his life-time, any personal estate by way of advancement, and shall choose to come into the distribution with the cher persons entitled, such advancement shall be brought into hotchpot with the distributable surplus.” See 12 Henning’s Statutes at Large, pages 140, 146.
!l By the third section it is enacted, that the posthumous child shall succeed to the ^jame portion of the father’s estate as such ¿hild would have been entitled to if the father had died intestate. It is necessary, then, to ascertain the proper meaning and Import of the words, “father’s estate.” Does such estate include advancements inade to children? or is it limited to what the father died possessed of?
1 Advancements made by a father to his children can not be regarded as his estate in any aspect, unless it may be so regarded, in a case of hotchpot under the twenty-fifth section. The doctrine of hotchpot is the creature of, and depends entirely upon, the statute of distributions; and the principle of the doctrine has been progressive. At one time it did not extend to the “issue of children.” Until the revisal of 1819, it did not extend so far as to blend real with .personal estate. Until then, a child 1? who had received advancement in *lands was not required to bring them into hotchpot to entitle him to jan equal distributive share of the personal upstate; and it has at no time extended to (Collateral distributees, and is still limited (to descendants of the intestate. The enactment is, that children who have received advancements shall not come into partition without bringing the advancements into hotchpot, and when brought in, the aggregate is to be divided equally between all the distributees; the principle of equality, or an approximation towards it, being the only one the Legislature could adopt, if they made any rule at all. This does make the advancements a part of the father’s estate descended, but only a part of the aggregate for the purpose of equal distribution, when they have been brought into hotchpot by those who received them; for the principle is, that all who participate in the distribution shall receive equally. Does or can this principle apply to a posthumous pretermitted child provided for by the third section? And if it does apply, must not *592 the whole principle apply? In cases of partial intestacy, where the testator disposes of part only of his estate, and leaves the residue undisposed of, it is settled that the doctrine of hotchpot does not apply, because it will vary the dispositions of the will, and revoke it pro tanto. Walton v. Walton, 14 Ves. jr. 318, and Snelgrove et als. v. Snelgrove et als., 4 Dessaussttre, 274. The third section not only ascertains the portion of the posthumous pretermitted child, but also how it shall be raised. It does not give such child a right to equal distribution of the property itself in kind, but declares that “towards the raising which portion the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them by the same will and testament.” This in nowise revokes the will, but leaves it in full force as between the devisees and legatees, subject only to the ratable abatement necessary to raise the portion of the posthumous child; and when this abatement is made, each devisee and legatee takes the residue of the devise and legacy. They cannot claim *to take upon the principle of equality, either with each other or with the posthumous child. And if any of them have received advancements, they cannot be required to surrender that residue, at least for the benefit of the other devisees and legatees who have received no advancements, by contributing more towards raising the portion of the posthumous child than the others, for the contribution must be proportional to the devises and legacies in the same will and testament. Could it, then, have been the Legislative intention that the advancements should be estimated for the purpose of ascertaining the portion of the posthumous child, and thus increasing the inequality between the devisees and legatees? The proposition assumes such inequality to exist. Were such, however, clearly the Legislative will, it must be carried out. But the doctrine of hotchpot, in its terms, applies only to actual intestacy, and does not apply to.partial intestacy; and is this any other than a case of constructive partial intestacy, created by law for a specific object, not indeed as to subjects of property, but the person to take? In construing statutes, it is a leading rule to give that construction, if it can with propriety be done, which will give effect to the whole. There can be no doubt about the manner in which the portion of the posthumous child is to be raised, that is to say, by ratable contribution by the devisees and legatees in the same will and testament. The only ambiguity supposed to exist is in the words, “father’s estate,” or in their meaning and import, as used in the clause under consideration. A man’s estate, in its ordinary and legal acceptation, is that which he can dispose of at his pleasure; and, in the case of a testator, that which he is possessed of and may dispose of absolutely by his will. To give it this meaning, in this clause, satisfies the statute, and leaves the other branch to operate. There can, therefore, be no propriety, as there is no necessity, to give it that enlarged meaning which would include what by another section of the law, providing *for a distinct object, may be considered quasi his estate. I am, therefore, of opinion, that the Legislature used the words “father’s estate,” in their plain and obvious, and not in any enlarged constructive sense. That while their purpose was to make provision for the posthumous child, they intended to lea-ve the inequalities, if any existed, as the testator had determined them, subjecting the devises and legacies to that ratable abatement only, necessary to raise the portion of the posthumous child. Farther than this, the3r did not intend to disturb the will, much less to abrogate it; and they have not so done, if I am right in my construction, that the phrase “father’s estate” means estate of which he died possessed. Therefore, the devisees and legatees who have been advanced cannot be required to bring their advancements into account.
An objection was taken to the regularity of the proceeding in. dismissing the amended bill without disposing of the whole case. This case came on with others, to be heard, by consent of the plaintiffs and the defendants, Thomas Miller and wife and William Miller and wife (the parties sought to be charged with the advancements), as between those parties, upon the pleadings between them, and in addition to this, the amended bill was between different parties and for different objects from those of the original, and might be properly disposed of as it was, without considering the original bill.
I am of opinion to affirm the decree.